UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH BAZZETTA,

               Plaintiff,

Case No. 1:13-cv-1117

Hon. Robert J. Jonker

v.

RICHARD HALLWORTH and
HARRIET SQUIRE,

               Defendants.

                                       /

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the Court on defendants' motion for summary judgment (docket no. 8).

### I.      Plaintiff's complaint

Plaintiff has directed his complaint against two defendants, Richard Hallworth, Chief Executive Officer (CEO) of Corizon, and Harriet Squier (incorrectly named as "Squire"), Regional Medical Officer (RMO) employed by Corizon and the Michigan Department of Corrections (MDOC). Plaintiff's complaint involves alleged deliberate indifference with respect to treatment of his hernia. Plaintiff sets forth the following allegations. In 1980, prior to incarceration, plaintiff was diagnosed with a right-side, lower-abdominal inguinal hernia, which was surgically repaired. Compl. at ¶ 6. In 1993, after his incarceration, plaintiff was diagnosed as having a left-side, lower-abdominal inguinal hernia, which the MDOC approved for surgical repair. *Id.* at ¶ 7. In 2007, a Physician's Assistant (PA) at Lakeland Correctional Facility (LCF) diagnosed plaintiff with a right-side, lower-abdominal inguinal hernia, which was the same repair site as the

1980 hernia.  *Id.* at ¶ 8.  In 2008, Dr. Harry L. Holwerda of Saint Louis Correctional Facility

diagnosed a hernia protrusion on the right-side, and attempted to reduce with a Truss.  *Id.* at ¶ 9.

On April 07, 2009,  Dr. Thomas O. Morgan, a general surgeon in Carson City, Michigan, evaluated

plaintiff and diagnosed him with a right inguinal hernia with a recommendation to repair.  *Id.* at ¶

10; Memorandum from Thomas O. Morgan, D.O. (April 07, 2009) (docket no. 1-1 at p. ID# 7).  On

August 27, 2009, Correctional Medical Services (CMS) denied a consultation request for surgery,

concluding on review that "Criteria not met. hernia repair denied.  Previous conversations indicate

only if incarcerated [sic]."  Compl. at ¶ 11; Consultation Request (August 27, 2009) (docket no. 1-1

at p. ID# 8).  On December 30, 2009, a Consultation Request for surgery was submitted by Shan

Ansari, M.D., which stated "Inguinal Hernia. Debilitating pain not responding to opiate analgesics.

This serves as an appeal of the alternative treatment plan."  Compl. at ¶ 12; Consultation Request

(December 30, 2009) (docket no. 1-1 at p. ID# 9).  Defendant Squier denied this request, stating "Att

Rx Plan: Please evaluate for [unintelligible] & Rx as needed.  Direct hernias that are reducible are

not routinely managed [with] surgery."  Compl. at ¶ 13; Squier Fax (Jan. 11, 2010) (docket no. 1-1

at p. ID# 10).

        Plaintiff does not include any allegations with respect to his conditions for the next

three years.  Plaintiff's allegations re-commence on January 4, 2013, when Dr. William Nelson of

Muskegon Correctional Facility Health Services requested surgery.  Compl. at ¶ 14.  At that time,

plaintiff alleged that his complaints:

> were of the same ilk as the previous three years, specifically that the hernia: is
> continuing to cause extreme pain; affects Plaintiff's stools and urination; causes
> intense pain in his right testicle; Plaintiff's overall health and energy is waning;
> difficulty in breathing at times; and the feeling that his heart skips a beat at times.

*Id.*  On January 07, 2013, defendant Squier denied the request for surgery.  *Id.* at ¶ 15.  Later that month, on January 20, 2013, plaintiff mailed a "Notice of Intent to File a Medical Malpractice Claim" to defendants Hallworth and Squier "to notify them of the medical complaints and pain that Plaintiff is experiencing" and request "that both Defendants intervene and approve the requested surgery."  *Id.* at ¶ 16.  However, neither defendant responded to the Notice or  authorized the surgery.  *Id.* at ¶¶ 17-18.  Plaintiff has exhausted his administrative remedies regarding defendants. *See* Grievance No. MCF-1302-183-12D ("183") (docket no. 1-1 at pp. ID## 11-15).  Plaintiff alleged that the incident occurred on January 17, 2013, filed the grievance on January 20, 2013, and received a Step III response denying his grievance on August 13, 2013.  *Id.*

Plaintiff alleged that defendants violated his Eighth Amendment rights by refusing to approve and provide medical procedures for a serious medical condition which caused plaintiff continuing pain, problems with stools and urination, pain in his right testicle, deteriorating health and energy, difficulty in breathing, and what feels like sporadic heart palpitations.  *Id.* at ¶¶ 20-21. Plaintiff seeks declaratory relief, a Court order directing defendants to "provide the required surgery," compensatory damages and $200,000.00 of punitive damages.  *Id.* at pp. ID## 5-6.

## II.     Defendants' motions for summary judgment

### A.     Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations

(including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Here, plaintiff did not file a response to the motion for summary judgment. "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). The trial court is required to "intelligently and carefully review the legitimacy of such unresponded-to motion" and cannot "blithely accept the conclusions argued in the motion." *Guarino v. Brookfield*

*Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992).  When a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact.   *Id.* at 405.  However, in this case, plaintiff filed a "verified" complaint, which included an unsworn declaration under penalty of perjury pursuant to 28 U.S.C. § 1746. *See* Compl. at p. ID# 6.  A verified complaint has the same force and effect as an affidavit for purposes of responding to a motion for summary judgment. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993).  Accordingly, the Court will treat the complaint as an affidavit for purposes of resolving the motion for summary judgment.

### B.      Statute of Limitations

Defendants contend that plaintiff's claims which arose prior to January 2013 are barred by the statute of limitations, specifically his claim that defendant Squier denied his December 10, 2009 request for surgery.  Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws.  *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984);  *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996).  To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law.  *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983. The statute of limitations for a § 1983 claim in Michigan is three years, based upon Michigan's three-year statute of limitations for injury to a person or property, M.C.L. § 600.5805(10). *Chippewa Trading Company v. Cox*, 365 F.3d 538, 543 (6th Cir. 2004).

5

Defendants point out that plaintiff's grievance regarding the December 2009 hernia evaluation and request for surgery was exhausted on April 12, 2010. *See* Grievance No. SLF-09-12-1741-12D ("1741") (grievance filed on December 29, 2009, the same date that plaintiff claimed Prison Health Services denied his request for a hernia operation) (docket no. 8-5 at pp. ID## 84-89). The statute of limitations which applies to a prisoner's § 1983 action is tolled during the period of exhaustion. *Owens v. Naylor*, 71 Fed.Appx. 519, 521 (6th Cir. 2003), *citing Brown v. Morgan*, 209 F.3d 595, 596-97 (6th Cir. 2000). Here, plaintiff's claim was tolled from December 29, 2009 until it was exhausted on April 12, 2010. The three-year statute of limitations for this claim expired on April 12, 2013. Because plaintiff did not file this action until October 10, 2013, his claims arising from December 2009 are untimely and barred by the statute of limitations. Accordingly, defendants' motion for summary judgment should be granted as to this claim.

### C.      Eighth Amendment claim

#### 1.      Legal standard

It is well established that an inmate has a cause of action under § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Id.* at 8-9. "Because society does not expect that

prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence in diagnosing or treating a medical condition does not constitute an Eighth Amendment violation. *Id.* at 835. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Plaintiff claims that defendants violated his Eighth Amendment rights when they were deliberately indifferent to his serious medical needs and denied the request for hernia surgery in January 2013. In addressing Eighth Amendment claims, the Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Here, plaintiff's complaint involves that latter, i.e., that the medical treatment provided did not adequately treat his alleged pain.

### 2.    Mr. Hollingsworth

In his certification, Mr. Hollingsworth stated: that during the times relevant to plaintiff's action, he was CEO of Corizon Health, Inc. f/k/a Prison Health Services, Inc.; that he is a business executive, not a health care adviser or medical professional; that he never provided health

care to any inmate in Michigan or elsewhere; that he has never made any decision regarding the best

or appropriate course of treatment for an inmate; and that he provides no supervision with respect to

such decisions. Hollingsworth Cert. (docket no. 8-2). Plaintiff has presented no evidence that

Hollingsworth denied his request for surgery. Rather, plaintiff's own exhibits demonstrate that Dr.

Squier reviewed and then denied the request. Accordingly, defendant Hollingsworth should be

granted summary judgment with respect to the Eighth Amendment claim.

### 2. Dr. Squier

It is undisputed that plaintiff has a right inguinal hernia. In her certification, Dr.

Squier explained plaintiff's diagnosis and treatment:

> A right inguinal hernia occurs when a male individual's bowel or intestine extends into his inguinal canal. For inguinal hernias, the risk of negative complications like bowel/intestine strangulation and incarceration is very low. Therefore, for this condition, surgery is not always required or medically indicated. Specifically, when a hernia is reducible (able to be pushed out of the inguinal canal back into the abdominal cavity), research shows that simply monitoring the hernia over time equally results in good outcomes as surgery while avoiding the inherent risks of surgery, including complications and long term pain.

> \*    \*    \*

> As the Medical Director for Utilization Management, when evaluating consultation requests for hernia surgery, I would primarily be looking at whether the hernia was reducible or extending into the scrotum to determine the likelihood of strangulation or incarceration. As stated above, if neither of these conditions existed, the risk of complications from surgery was typically greater than the benefit of surgery over continued monitoring and non-surgical treatment.

> \*    \*    \*

> Prior to January 2013, Plaintiff had a history of hernia issues and apparently received surgery on his left side at one time. However, while incarcerated, Plaintiffs right inguinal hernia was reducible and he was being provided a truss to prevent the hernia from extending back into the inguinal canal. In addition, Plaintiff was being provided an athletic supporter and had a bottombunk profile. [See Exhibit C, p. 5-6]

> \*    \*    \*

8

On January 4, 2013, Plaintiff's medical record indicates he presented to Dr. Nelson with a right inguinal henna that had existed for years. As Dr. Nelson noted, at that time Plaintiff's hernia was reducible and there is no indication that the hernia extended into Plaintiff's scrotum. Dr. Nelson also referred Plaintiff's condition for review to determine appropriateness of surgery. [Ex. C, p. 9-12]

*          *          *

On January 7, 2013, as the Medical Director for Utilization Management, I reviewed the surgery request. At that time, due to the fact that Plaintiff's hernia was still reducible and there was no indication that it was extended into his scrotum, weighing the potential complications, risks of surgery and difficulty of recovery, I determined that surgery was not medical [sic] indicated at that time. However, I noted that Plaintiffs condition should continue to be monitored. If Plaintiff's condition worsened to the point where the hernia was no longer reducible or that it fully extended into his scrotum, surgery would be appropriate. Also at that time, I recommended discontinuing the use of a truss because there is some thought in the medical community that the use of a truss itself has the potential of causing complications. However, there is no definitive research one way or the other. Therefore, the facility medical provider could continue or discontinue a truss for Plaintiff at their discretion. [Ex. C, p. 13-14]

*          *          *

According to his medical records, Plaintiff was informed of my decision regarding his hernia condition on January 30, 2013. [Ex. C, p. 20-21] Plaintiff's facility medical provider elected to allow him access to a truss for his condition through October 9, 2013, the date he filed this suit. Not only did Plaintiff continue to have a truss for his condition, he was offered different options and prison medical staff worked with him to find the one with the best fit. [*ld.* at p. 16, 22-29]

Squier Cert. at ¶¶ 5-10. In the surgery request at issue, dated January 4, 2013, Dr. Nelson stated that plaintiff had several years of right inguinal swelling; that plaintiff has been using a truss; that the hernia is large and "apparently painful"; that the right inguinal defect is not very large "making reducing the hernia difficult"; that the truss "does not always contain the hernia"; and that the hernia is not strangulated. Medical Records (docket no. 10 at p. ID# 116).

There is no question that plaintiff received medical treatment for his hernia in the form of a truss, with additional accommodations of an athletic supporter and bottom bunk detail.

However, Dr. Squier's certification includes inconsistencies.  As an initial matter, while Dr. Squier's

certification referenced plaintiff's past left-side hernia surgery, the certification did not mention that

plaintiff's right-side hernia had been previously repaired in 1980.  In fairness to Dr. Squier, Dr.

Nelson's request did not address the previous repair.  For this reason, it is unclear whether the doctor

considered the previous repair in her decision-making process.  In addition, Dr. Squier pointed out

that while plaintiff's right-side hernia was being treated by a truss, she actually recommended against

a truss because there was some thought in the medical community that the truss itself, an alternative

to surgery, could cause complications.  However, she also admitted that since "there is no definitive

research one way or the other" as to whether a truss helps a person with a hernia or causes

complications, the facility medical provider had the discretion to use a truss.  In this case, it appears

that Dr. Nelson exercised his discretion to recommend surgery rather than use of a truss which "[did]

not always contain the hernia."  Another medical provider authorized the use of a truss after the

request for surgery was denied. *See* Medical Records at p. ID# 16.  Dr. Squier's certification appears

to be internally inconsistent, creating factual issues (1) as to plaintiff's medical history with respect

to previous right-side hernia surgery, (2) as to whether a truss was the appropriate treatment for

plaintiff's right-side hernia, and (3) as to whether the facility medical provider had any discretion to

prescribe a truss, since the provider only elected to authorize a truss after the requested surgery was

denied.   Based on this record, it appears that Dr. Squier's certification creates a genuine issue of

material fact with respect to the objective component of plaintiff's Eighth Amendment claim (i.e.,

whether the denial of surgery was in effect a failure to treat a serious medical condition).

However, no such factual questions exist with respect to the subjective component of

plaintiff's Eighth Amendment claim.  To prevail on the subjective component, plaintiff must

demonstrate that Dr. Squier knew of and then disregarded an excessive risk to plaintiff's health or safety. *Farmer*, 511 U.S. at 837.  Here, while there was a disagreement between plaintiff's medical providers (including Dr. Nelson) and Dr. Squier as to whether plaintiff required surgery to repair his right-side hernia, "disagreement among doctors is not enough to show deliberate indifference." *Wilkins v. Wahl*, 563 Fed.Appx. 495, 497 (7th Cir. 2014).  As one court observed:

> "There is not one 'proper' way to practice medicine in prison, but rather a range of acceptable courses based on prevailing standards in the field." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir.2008).  For a medical professional to be held liable under the deliberate indifference standard, he must make a decision that is "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* (quoting *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir.2008)).

*Holloway v. Delaware County Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012).  Although Dr. Squier's certification included inconsistencies, it did not establish such a substantial departure from accepted professional judgment as to demonstrate that Dr. Squier's decision denying surgery was based on something other than her medical judgment.  Even if Dr. Squier did not recognize plaintiff's past right-side surgery, and felt that the use of the truss had both positive and negative effects, she rejected the surgical option because plaintiff's hernia was still reducible, there was no indication that the hernia extended into plaintiff's scrotum, and the surgical option had its own risks, including potential complications and difficulty of recovery.

Furthermore, plaintiff did not respond to the motion for summary judgment and has not presented any evidence to establish the subjective component.  While this Court noted the internal inconsistencies in Dr. Squier's certification, it is not required to conduct a "probing investigation of the record" to demonstrate the existence of genuine issues of material fact on the subjective

component of plaintiff's Eighth Amendment claim.  *See Guarino*, 980 F.2d at 405.  Accordingly,

Dr. Squier's motion for summary judgment should be granted.

### IV.      Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion

for summary judgment (docket no. 8) be **GRANTED** and this matter **TERMINATED**.

Dated:  March 27, 2015                              /s/ Hugh W. Brenneman, Jr.
                                                   HUGH W. BRENNEMAN, JR.
                                                   United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk
of the Court within fourteen (14) days after service of the report.  All objections and responses to
objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections
within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474
U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).